UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

UNITED STATES OF AMERICA,

        Plaintiff,        CASE NO. 18-20403
                                 HON. DENISE PAGE HOOD

v.

DOMINIQUE TRUMBO,

        Defendant.
_____/

## ORDER REGARDING VARIOUS MOTIONS IN LIMINE
## [#42; #43; #45; #49; #52]

**I.    BACKGROUND**

On June 12, 2018, Defendant Dominique Trumbo was charged in a four-count Indictment, which was superseded on November 13, 2018 with a First Superseding Indictment alleging: Conspiracy to Commit Health Care Fraud and Wire Fraud, 18 U.S.C. § 1349 (Count 1); Conspiracy to Pay and Receive Healthcare Kickbacks, 18 U.S.C. § 371 (Count 2); and Receipt of Kickbacks in Connection with a Federal Health Care Program, 42 U.S.C. § 1320a-7b(b)(1)(A) and 18 U.S.C. § 2 (Counts 3-5). (Doc # 27) The First Superseding Indictment alleges that Defendant, through Trumbo Consulting Agency, received illegal kickbacks and bribes in exchange for referring Medicare beneficiaries to a home health care agency, U.S. Home Health Care, Inc., that was owned and controlled by Tasadaq Ali Ahmad ("Ahmad").

The parties recently filed several Motions *in Limine*. (Doc # 42; Doc # 43; Doc # 45; Doc # 49; Doc # 52) Oral arguments were held on two of the five Motions (Doc # 42; Doc # 43) on July 17, 2019. All five Motions are currently before the Court.

II.   ANALYSIS

**A. Defendant's Motion *in Limine* to Preclude Witness Shelly Dailey from Rendering Legal Conclusions During Testimony (Doc #42)**

Defendant seeks to preclude the Government's witness, Shelly Dailey ("Dailey"), from rendering any legal conclusions and/or misleading legal generalizations during her testimony at trial. (Doc # 42) According to Defendant, there have been previous cases in which Dailey testified and opined about her interpretation of the Anti-Kickback Statute's safe harbor provisions. In addition to the fact that Defendant believes that Dailey's opinions offered in past cases are inaccurate, Defendant argues that Dailey is not qualified to present the Court with any legal conclusions and/or generalizations.

In response, the Government makes three arguments to the Court. First, the Government claims that the safe harbor provisions of the Anti-Kickback Statute are irrelevant in this case because none of the payments that are at issue fall within any of the safe harbor provisions of the Statute. Second, the Government asserts that given Dailey's experience as a registered nurse and a long-time employee of the

National Government Services ("NGS"), she is sufficiently qualified to be an expert witness in this case. The Government also points out that Dailey has been deemed a qualified expert in at least six previous trials in the Eastern District of Michigan. Third, the Government contends that Dailey's testimony about the rules and regulations of government insurance providers should be permitted since she has adequate knowledge about this topic from her training and experience at NGS to understand Medicare's perspective on claims that are "tainted by illegal kickbacks."

Rule 702 of the Rules of Evidence governs the admissibility of expert testimony. The trial court must determine whether the expert meets three requirements: 1) that the witness must be qualified by "knowledge, skill, experience, training or education;" 2) the proffered testimony is relevant and "will assist the trier of fact to understand the evidence or to determine a fact in issue;" and, 3) the testimony is reliable in that it is based on scientific, technical or other specialized knowledge. Fed. R. Evid. 702; *In re Scrap Metal Antitrust Litigation,* 527 F.3d 517, 529 (6th Cir. 2008). As to the third requirement, in *Daubert v. Merrell Dow Pharmaceuticals, Inc.,* 509 U.S. 579 (1993), the United States Supreme Court set forth factors to be considered in determining whether to admit expert testimony as reliable. The four factors are: 1) whether a theory or technique can be (and has been) tested; 2) whether the theory or technique has been subjected to peer review and publication; 3) the known or potential rate of error in using a particular and scientific

technique and the existence and maintenance of standards controlling the technique's operation; and 4) whether the theory or technique has been generally accepted in the particular scientific filed. *Id.* at 593-94. The factors are neither definitive, nor exhaustive, and may or may not be pertinent to the assessment in any particular case. *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 141 (1999). The factors will often be appropriate in determining reliability. *Id.* at 152. The trial court has broad latitude to determine whether these factors are reasonable measures of reliability in a particular case. *Id.* at 153. The test of reliability is "flexible," and the *Daubert* factors do not constitute a definitive checklist or test and may not be dispositive in every case. *In re Scrap Metal,* 527 F.3d at 529.

The Court first acknowledges that both parties have confirmed that the safe harbor provisions of the Anti-Kickback statute are not relevant in this case, and the Court addresses this issue in greater detail below. Next, the Court finds that Dailey qualifies as an expert in this case. Defendant does not raise any arguments regarding Dailey's qualifications and expertise. As the Government indicates, Dailey's specialized knowledge as it pertains to reviewing and analyzing claims and determining the appropriateness of services and claims related to home health, makes her qualified to testify as an expert in this case. Finally, while Dailey is qualified as an expert, she will not be allowed to provide any legal conclusions about the Anti-Kickback Statute's safe harbor provisions because expert witnesses are not

permitted to make any legal conclusions. *See United States v. Melcher*, 672 F. App'x 547, 552 (6th Cir. 2016) ("Rule 702 prohibits expert witnesses from testifying to legal conclusions."). Dailey will however be given the ability to testify about Medicare's rules and regulations. The Court grants Defendant's Motion (Doc # 42) in part as to Dailey's testimony regarding legal conclusions. However, Dailey is qualified as an expert and will be able to testify at trial on behalf of the Government.

### B. Government's Motion *in Limine* to Exclude any Reference to the Safe Harbor Provisions of the Anti-Kickback Statute (Doc #43)

The Government requests that the Court preclude Defendant from mentioning the Anti-Kickback Statute's safe harbor provisions at trial. (Doc # 43) The Government argues that the Statute's safe harbor provisions are considered to be affirmative defenses and that Defendant has not made a pretrial threshold showing that he can produce evidence that will sufficiently support such a defense. The Government contends that Defendant cannot make a *prima facie* showing that any relevant safe harbor provision applies in the instant case. Since, as the Government argues, Defendant has not made the initial pretrial threshold that the Statute's safe harbors provisions are applicable, the Governments seeks an order that any arguments or evidence that pertain to the safe harbor provisions be excluded from trial pursuant to Federal Rules of Evidence 401 and 403.

Defendant agrees that none of the Anti-Kickback Statute's safe harbor provisions apply as an affirmative defense in his case, but wants the jury to be aware of the safe harbor provisions. Defendant's argument is premised on informing the jury about the safe harbor provisions to ensure that he is not disadvantaged at trial. Defendant contends that he anticipates that the Government's witnesses will speak about the Anti-Kickback Statute in terms of an absolute prohibition on persons receiving payments from the home health agency in connection with patient referrals. Defendant wants the jury to understand that there are certain instances where the safe harbor provisions apply--when payments made in connection with certain referrals do not constitute unlawful actions. Defendant further asserts that if the jury is made aware of safe harbor provisions, it will assist with allowing the jury to examine if Defendant exhibited the wrongful intent necessary to *willfully* and *knowingly* violate the Anti-Kickback Statute. This, according to Defendant, will give the jury "something to gauge against Defendant's conduct."

The Court grants the Government's Motion. As an initial matter, it is uncontested, by both parties, that Defendant does not have any affirmative defenses under the safe harbor provisions of the Anti-Kickback Statute. (Doc #43, Pg ID 225-227; Doc #58, Pg ID 314; but see Doc #58, Notice of Affirmative Defense) Since both parties agree that the safe harbor provisions do not apply in this case, the Court finds that introducing the safe harbor provisions at trial would be improper because

the provisions are not relevant. If the Court were to permit Defendant to mention such provisions, that have no bearing on his case, it may cause the jury to consider a defense that is not raised by Defendant. Due to the potential confusion the introduction of the safe harbor provisions would create, the Court will preclude any mention of the Anti-Kickback Statute's safe harbor provisions. While Defendant will be able to litigate and argue that the elements of the Statute have not been met by the Government, he will not be able to refer to the safe harbor provisions as a defense to his case or as an "available" defense to anyone charged under the Statute.

### C. Defendant's Motion *in Limine* to Preclude Specified Hearsay and Other Evidence not Within the Alleged Conspiracy (Doc #45)

Defendant argues activities that predate the indictment allegations[1] should be precluded under Federal Rule of Evidence 404(b), including: (1) monies paid to Trumbo; (2) patients received by the home agency; (3) monies paid to the home agency by Medicare for patients receiving treatment in 2006; and (4) Ahmad's statements to Government agents from 2006-2008. (Doc #45) Defendant contends that these pieces of evidence should be excluded as hearsay and alleges that they consist of unproven and prejudicial information. The Government argues that evidence from outside the charged conspiracy period is relevant and admissible because it is inextricably intertwined with evidence of Defendant's conduct alleged

---

[1] The First Superseding Indictment alleges that Defendant committed the alleged crimes between November 2013 and February 2017. (Doc # 27)

7

in the First Superseding Indictment, and is necessary to complete the story of the charged offense. The Government additionally claims that the evidence is relevant as evidence of intent, plan, knowledge, and absence of mistake.

Federal Rules of Evidence 404(b) precludes the admission of evidence of "other crimes, wrongs, or acts" when used to prove the Defendant's character. However, such evidence may be used to prove motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident, "provided that the prosecution ... provide reasonable notice in advance of trial ..." *Id.* The trial court has broad discretion in determining whether similar act evidence is admissible. *United States. v. Stout,* 509 F.3d 796 (6th Cir. 2007). However, Rule 404(b) is inapplicable "[w]here the challenged evidence is 'intrinsic' to, or 'inextricably intertwined' with evidence of, the crime charged." *United States v. Marrero,* 651 F.3d 453, 471 (6th Cir. 2011) (quoting *United States v. Henderson,* 626 F.3d 326, 338 (6th Cir. 2010)). Additionally, "background" evidence does not implicate Rule 404(b). Such evidence has a "causal, temporal or spatial connection with the charged offense. Typically, such evidence is a prelude to the charged offense, is directly probative of the charged offense, arises from the same events as the charged offense, forms an integral part of a witness's testimony, or completes the story of the charged offense." *United States v. Hardy,* 228 F.3d 745, 748 (6th Cir. 2000).

The trial court must first determine whether there is sufficient evidence to allow the jury to make a reasonable finding, by a preponderance of the evidence, "that the act ocurred and that the defendant was the actor." *Huddleston v. U.S.,* 485 U.S. 681, 690 (1988); *United States v. Gessa,* 971 F.2d 1257, 1261–62 (6th Cir.1992). The trial court must then assess whether the similar acts evidence is probative of a material issue other than character. *Huddleston,* 485 U.S. at 686. The next inquiry is whether the evidence is relevant to a matter "in issue." *United States. v. Feinman,* 930 F.2d 495, 499 (6th Cir.1991). The evidence "must deal with conduct substantially similar and reasonably near in time to the offenses" to the conduct for which defendant is being tried. *Id.* Finally, the court must determine whether the evidence's probative value is substantially outweighed by the danger of unfair prejudice, confusion, or misleading the jury. Fed.R.Evid. 403; *see also Feinman,* 903 F.2d at 499.

The Court denies Defendant's Motion. The information that Defendant seeks to preclude from trial will not be excluded because it is acceptable evidence under Federal Rule of Evidence 404(b). The evidence that predates November 2013 and pertains to Defendant allegedly receiving money in exchange for patients receiving medical treatment is probative of Defendant's intent, plan, knowledge, and absence of mistake or accident in relation to the crimes he is charged with committing. This

evidence is certainly relevant, would assist the trier of fact, and its probative value is not outweighed by its prejudicial effect on Defendant's case.

### D. Government's Omnibus/Supplemental Motions *in Limine* (Doc #49)

The Government asks the Court to grant its additional Motions *in Limine* which supplements its Motion in Limine to Exclude any Reference to the Safe Harbor Provisions of the Anti-Kickback Statute. (Doc #49) The supplemental Motions *in Limine* request that the Court preclude the following:

1. Any suggestion or accusation that a prosecutor or agent engaged in misconduct;
2. The presence or absence of any particular person on the government's witness list, or the government's plans to call or not call a particular witness;
3. The Government's failure to call a particular witness;
4. Criminal records of any witness;
5. Any out-of-court statements made by Defendant if offered to prove the truth of the matter asserted;
6. Disputes over discovery, including the timing of the production of records to the government by witnesses;
7. Which other persons have, or have not, been charged in this or other cases;
8. Any argument that encourages jurors to ignore the law, not follow this Court's instructions, or otherwise violate their oaths as jurors;
9. Plea negotiations, plea offers, or the Defendant's rejection of a plea offer;
10. Potential punishment or any other consequences that might result from a conviction;
11. Defense counsel's personal opinions of, or relationship with, the Defendant;
12. Other providers billing Medicare for home health services purportedly rendered to patients who also received services from U.S. Home Health, Inc.; and

13. The existence or content of the United States' Motions *in Limine* and any Order of this Court in response to the Motion.[2]

(*Id.*)

Defendant does not oppose the motion, except for number 12. Defendant specifically directs the Court to one part of number 12 where the Government argues that it is irrelevant whether Medicare beneficiaries qualified for home health services because the instant case concerns whether Defendant was paid as a patient recruiter to bring Medicare beneficiaries to US Home Health, Inc. Defendant asserts that whether Medicare beneficiaries qualified for home health services is relevant since he intends to claim that his patients were homebound and that US Home Health, Inc. only accepted homebound patients. Defendant claims that the issue regarding homebound patients affects whether Defendant had an intent to violate the law by supplying *anybody* to the home care agency as opposed to working on a hourly basis with homebound patients, which allegedly could reflect a lack of criminal intent.

The Court grants all of the Government's supplemental *Motions in Limine*. As to 1-11 and 13, the Court finds that these facts and any reference to these issues are precluded from trial since the defense does not raise any arguments against the Government's motion.

---

[2] The Government numbers these supplemental Motions differently. The Court will refer to the Motions as they are numbered above.

Regarding the specific section of number 12 from the above list, the Court finds the Government's argument persuasive. Whether a beneficiary qualified for home health services is not relevant to whether Defendant engaged in recruiting patients to bring Medicare patients to US Home Health, Inc.

**E. Defendant's Supplemental Motion *in Limine* to Preclude Specified Evidence (Doc #52)**

Defendant requests that the Court grant its additional Motion *in Limine* to Preclude Specified Hearsay and Other Evidence not Within the Alleged Conspiracy. (Doc # 52) The supplemental Motion *in Limine* requests that the Court preclude the following:

1. Any reference to a doctor having been convicted and who may also have serviced one of Defendant's patients as it allegedly has no relevance to Defendant's guilt pursuant to Federal Rule of Evidence 401;
2. Any reference to Defendant being bi-sexual/homosexual or having boyfriends because it is allegedly prejudicial under Federal Rule of Evidence 401;
3. The testimony of Rommel Perez ("Perez"), which is being offered as character evidence because it is allegedly prejudicial and not admissible under Federal Rule of Evidence 404(b); and
4. Pre-2013 evidence since it allegedly runs afoul of the applicable statute of limitations that is applicable to the Medicare Fraud and Anti-Kickback Statute violations according to 18 U.S.C. § 3282.

(*Id.*)

The Court grants in part and denies in part Defendant's supplemental Motion. First, evidence referencing the convictions of doctors who may have serviced one of Defendant's patients could be relevant to whether Defendant was aware that those physicians engaged in fraudulent conduct. If at trial, Defendant believes that such evidence is not being used in that manner, Defendant may object to the jury considering that evidence and the Court will rule on such objections accordingly. Defendant's first request is denied.

Second, the Court agrees that references to Defendant being bi-sexual/homosexual or having boyfriends is not relevant to Defendant's guilt and could be prejudicial. The Government argues that Defendant's sexual orientation is relevant to prove Defendant's character for truthfulness in the event that Defendant elects to testify at trial under Federal Rule of Evidence 608(b). Federal Rule of Evidence 608(b) provides:

> Specific instances of the conduct of a witness, for the purpose of attacking or supporting the witness' character for truthfulness, other than conviction of crime as provided in rule 609, may not be proved by extrinsic evidence. They may, however, in the discretion of the court, if probative of truthfulness or untruthfulness, be inquired into on cross-examination of the witness (1) concerning the witness' character for truthfulness or untruthfulness, or (2) concerning the character for truthfulness or untruthfulness of another witness as to which character the witness being cross-examined has testified.

Neither party has indicated that Defendant will testify at trial and Federal Rule of Evidence 608(b) only applies to witnesses. At this time, the Court precludes the Government from introducing any evidence of Defendant's sexual history. If however, Defendant testifies, and Defendant's sexual history becomes an issue, the Government may seek to introduce any sexual history evidence by first requesting such outside the presence of the jury. Defendant's second request is granted.

Third, the Court will not prohibit the Government from calling Perez to testify on the Government's behalf. Perez is the owner of Premium Home Health Care, Inc. ("Premium"), which is a home health agency located in Detroit. (Doc #55, Pg ID 304) Defendant was allegedly a marketer for Premium during a period of time that precedes and overlaps with the alleged conspiracy. (*Id.*) The Government argues that Perez will testify that he paid Defendant for Medicare beneficiary information on a per-patient basis, and that he was aware that an unlawful scheme transpired. The Court finds that such testimony will not be excluded in accordance with Federal Rule of Evidence 404(b) because it could be evidence of intent, plan, knowledge, or absence of mistake or accident.

Lastly, the Court will not prevent the Government from introducing evidence that stems from activities that predate the indictment allegations due to the relevant statute of limitations under 18 U.S.C. § 3282. 18 U.S.C. § 3282 provides that,

> Except as otherwise expressly provided by law, no person shall be prosecuted, tried, or punished for any offense, not capital, unless the indictment is found or the information is instituted within five years next after such offense shall have been committed.

The Government is not attempting to prosecute Defendant for crimes that are more than five years old. The Government intends to present at trial acts and events that are beyond the five years statute of limitations pursuant to Federal Rule of Evidence 404(b) to show Defendant's intent, plan, knowledge, or absence of mistake or accident as to the crimes alleged in the indictment which are not barred by the statute of limitations under 18 U.S.C. § 3282. Section 3282 does not preclude the Government from raising incidents that occurred prior to the indictment allegations under Rule 404(b). Defendant's last request is denied.

## III. CONCLUSION

For the reasons set forth above,

IT IS HEREBY ORDERED that Defendant Dominique Trumbo's Motion *in Limine* to Preclude Witness Shelly Dailey from Rendering Legal Conclusions During Testimony (Doc #42) is **GRANTED**. Ms. Dailey may testify as an expert and as to facts as more fully set forth above.

IT IS FURTHER ORDERED that Government's Motion *in Limine* to Exclude any Reference to the Safe Harbor Provisions of the Anti-Kickback Statute (Doc #43) is **GRANTED**.

IT IS FURTHER ORDERED that Defendant Dominique Trumbo's Motion *in Limine* to Preclude Specified Hearsay and Other Evidence not Within the Alleged Conspiracy (Doc #45) is **DENIED**.

IT IS FURTHER ORDERED that Government's supplemental Motions *in Limine* (Doc #49) are **GRANTED**.

IT IS FURTHER ORDERED that Defendant's Supplemental Motion *in Limine* (Doc #52) is **GRANTED IN PART AND DENIED IN PART** as more fully set forth above.

                                                            s/Denise Page Hood
                                                            Chief Judge, United States District Court

DATED: July 22, 2019